Next case is Walker Digital v. Microsoft and Google, 2013-1584, Mr. Fenster. The court should reverse the district court's claim construction for the term auction because the district court deviated from the plain meaning of the term and the express definition of the term by limiting the construction to exclude multi-sale auctions. Each of the 802 patent claims requires placing bids, quote, according to an amount of time left in the auction, correct? Would you agree that this claim language describes placing bids in a time-limited auction? Yes, Your Honor. How would the claim method function properly if auction is construed to include multiple sales in a time-limited auction? So there are many different kinds of auctions. They occur in a variety of forms, some have time-limited, some have not, some are one-sale, some are multi-form. So let's take, for example, the Mori-type sale, which is in the intrinsic record, Mori is the prior art reference that describes a sale, a multi-sale auction of 200 units of tulip boxes or tulip bowls. So if those are sold with an end time of 8 o'clock, those will be sold throughout the day and you can place your bid according to a rule, you use a proxy bidder that places it according to a rule based on the amount of time left in the auction. You may or may not get any at the end of the day because there may or may not be tulip bulbs left, but it would certainly function in that. It would function in a livestock auction, it would function in a commodities auction, and it would function in the defendant's auction where you have an auction that goes throughout the period of the day and there are multi-sales, multiple sales of fungible goods. But the bid generator that's claimed by the patent places bids according to the amount of time left in the auction, right? Yes. For a particular item or lot. That's correct. Okay. So if we read that to involve a sale for multiple goods or services, the auction for multiple sales can't work, can it? It can, Your Honor. So for example, in the Mori auction, let's say I am betting that the price is going to go down at the end of the day. And so while it may start off at 100 yen, in that case it was a Japanese reference, by the end of the day I want to bid 80. If there are any left by the end of the day, I'll bid up to 80 yen. So I'm betting that I will be able to get tulip boxes, tulip bulbs at a lower price by waiting until the end of the day. Now someone else may want to bid earlier in the day to make sure that they get them, but I want to make sure that I get mine at the right price, and so I'm going to place a rule through my proxy bidder that places that bid based on the amount of time left in the auction. And it can absolutely function that way. It will not apply to every multi-sale auction, and that is irrelevant to the construction of auction. The claimed method doesn't work for all single-sale methods either. How does it work here? I'm sorry? Under your theory, how does it work here? In defendant's auction? Yeah. Is that what you mean, the infringement theory? Yeah. Okay. The infringement theory is, there's an auction throughout the day, they auction multiple fungible ad spaces or keywords throughout the day, and they have... You can specify your rules, the person bidding on those ads can specify rules that allocate their bids throughout the day. And they can specify that I want to bid so much in the morning, so much at the end, I want to bid so much within X period of the day, if I haven't, if I still have budget left at the end of the day, you can bid up to a certain amount. So that's how it works. You can allocate, and you can place rules in defendant's system based on the amount of time left in the auction throughout the period of the day. There is no clear disavowal of a multi-sale unit. It is undisputed. But it doesn't involve putting in a new bid to top somebody else's bid. I'm not sure I understand your honorable question. Well, my understanding of the auctions described in the specification here is that there's a series of bids by different bidders, and that the topping bid doesn't get put in immediately after the last bid, but is put in depending on the time remaining in the auction. That's not what happens with respect to the defendant's auction. There isn't an initial bid and putting in a topping bid later on, right? Everybody puts in the bids at the beginning of the day, and some people get things and some people don't. Your Honor's question goes to the infringement question, which is not really relevant to the issue before the court, which is claim construction. Well, it is relevant, because to understand the claim construction, you have to understand what the infringement theory is. I'm not sure I would agree with that statement of the Federal Circuit Law. I think that the Phillips says that you do the claim construction based on the intrinsic record. Is it abstract? No. You do the claim construction knowing what the issue in the case is. Yes. And the issue in the case isn't the proper claim construction of auction isn't informed by the infringement theory in this case. The infringement theory in this case is that there are rules that are based on the amount of time left in the auction throughout the period of the day. So that's our infringement read. But the bidders aren't putting in different auctions depending on the different prices depending on what somebody else bid, right? They set rules indicating how much they're willing to pay throughout the day, and they have rules that specify that's based on how much time is left. So, well, Your Honor's question, it doesn't go to the claim construction of auction. It goes to whether another term is met, which is determining that the highest bid in the auction is not from the bidder. It doesn't really go to the term here, which is the claim construction of auction. So, but there's a reference, this is a different point, and there's a reference in Claim 1 to a bid generator for an item for a bidder in an auction. Isn't, doesn't that indicate that we're talking about a bid on a single item? The bid is specific to an item, an ad, in an auction. Now it can be one of, it doesn't have to be a specific one, it can be a, when you have a multi-unit auction involving fungible goods, I'm bidding on an ad. I'm bidding on a tulip bulb, or five tulip bulbs. It's not specifically bulbs number six, seven, eight, nine, but I'm bidding on an item which is a lot of five ad, five tulips, or five ads, or a specific keyword. That's what you're bidding on. It's an item that's described in the item database that's within the auction. So, the argument here is very straightforward with respect to the term auction. Auction is expressly defined in the specification that express definition is not limited to a single sale. The express definition accords with the plain meaning of the term auction, and the plain meaning of the term auction, it's undisputed and shown in the intrinsic record, includes both single sale auctions and multi-sale auctions. And so, under this court's precedent, it's improper to limit the construction of auction to exclude multi-sale, unless there's evidence of clear disavowal or manifest exclusion. And there is no such evidence here. The FLEs don't point to any in the district court, didn't point to any clear disavowal. You're saying that the definition of an auction is a sale in which goods or services flow. And you're saying that supports your point, that it's not limited to one sale. I think it is supportive. I agree that it's not dispositive of the issue. But what is dispositive is that the express definition does not have a limitation that it's limited to a single sale. And there, later on, it says a bid is an offer, includes an offered price for the good or service. That's right. In its singular. That's right. And when it was specific to a specific item, we expressly said so in the specification, and the specification expressly says that a bid is for an item, but it doesn't say that an auction is for a single item in a single sale. And the court erred by importing that limitation without a clear disavowal or manifest exclusion. We'll save your rebuttal time if you like. Yes, Your Honor. Thank you. This is Mr. Malachy. Yes, Your Honor. And you're handling the whole argument. Yes, Your Honor. Thank you. Good morning, Your Honors. The district court was confronted with a claim term with two common English usages. It could be an auction sale, or it could be an event that we go to that's an auction that has a bunch of different sales taking place. And the district court properly reviewed the claim language and the other intrinsic evidence to conclude that in the context of these claims, the word auction is being used to refer to one sale. But what about the definition in the specification that says goods or services? Yes, Your Honor. And if you look at the specification, an item may be composed of goods and services. So one item or a lot is being sold. An example in figure five of the patent is the karaoke machine along with some tapes that one could use. But that is goods. It's plural goods. But it is one item that you can bid on. You can't bid separately on the tapes than the karaoke machine. So that, as the district court found, that goods and services language does not answer this question. And, in fact, when you look at that language in context with the rest of the specification, it leads one to conclude that that's not what the patentee intended. Well, what I'm not fully understanding is why this claim doesn't work if auction means multiple items, because it talks about for an item at an auction at which multiple items are sold. So why doesn't the claim work if auction means multiple items, but the claim method applies on an item-by-item basis within that overall auction? What's the matter? So, Your Honor, it's the total overall claim, of course, right? We have to meet all of those limitations together. And what would happen here if we have a multiple-item auction is, including the Moria auction, and we can get to that, you don't have any control on bidding on the right item, problem number one. You may not bid on other items you want in that multi-item auction because your one bid was accepted. And, worst-case scenario, you may actually outbid yourself unnecessarily on ultimate loss because you've looked at the course. If you've defined the auction, we have to know the auction before we start. We can't change the definition of the auction at different times in application of the claim. And so we're going through the day, the Moria auction, they sell it for $100 at the beginning. He says, later in the day, I can say I only want to bid $80. But the way the rule would work is look back to see if I have to bid over the $100 or bid more. Well, why not one-time Moria auction, but why doesn't the claim work with respect to the auctions that your clients conduct? Because, Your Honor, we will be measuring, they are trying to define the auction that we would measure the end of the day against as this end-of-day auction, which is a factual dispute which we would get to if we ever had to because these auctions go 365 days a year constantly. They never stop, right, so there's no day to be measured. Putting that aside, if we're going to measure the auction by some arbitrary 24-hour period, the rule then looks over the course of all the bids and prices paid in that auction. And so you're referencing bids for items that are not the item that you're trying to bid on. That's the problem that's driven by this. I hadn't thought of this before, but does any sort of state regulation apply to what your client does? That is, I know from when I practice law that there are state laws covering auctions. The honest answer to that, Your Honor, is I have no idea. Because it also appears to me that what is being described in the PET is the sort of thing that is exactly regulated by state laws, and a state would be very interested in, for example, their definition of what an auction is if the patented system was used within their state. Buying red rooster, white rooster in the face of a war, and so on. Right. The fact of the matter is that in any given auction that happens in my clients, anyone in the world can be participating in that sale at that time, and they all have different days that they're operating under. So I don't know if I've answered your question adequately, but... I think it goes more towards the distinction between what you do and what the PET covers, but I'm just curious about the definition of auction under state laws. Right. If you see this method, it's applying to a typical Christie auction, let's say. Yes. And the auction covers multiple items, but the method applies on an item-by-item basis. There's nothing unworkable about it, is there? Yes, there is, Your Honor. Why is it unworkable? Because you're solving their problem for them by saying that the auction that's used in three claim terms is two different auctions. We have auctions within auction, the auction event. And what I'm saying is that you read the claim to apply on an item-by-item basis. When it later references to the highest bid in an auction, it means in an auction, in the auction for that particular item. And if you read the claim that way, there's nothing unworkable about it. Just because you go to Christie's and they have 100 items, and this claim, method claim, applies to the bidding that takes place on an item-by-item basis. That works, right? It does not, Your Honor. Let me explain why. First of all, you're directly on to something. We've agreed, and it is not a matter of repeal, that in that clause that says determine the highest bid in the auction for that particular Eric Clapton guitar, that brownie that you definitely want, is for that item. Right? That is an auction for that item. It starts at $100, you bid $200, you bid $300. It has an end when someone buys the item. Okay? The auction they want to say is the auction in the claim term, two sentences, phrases above it, is the Christie's auction for the day, which ends when? At 6 p.m. that day. The brownie auction ended at 10 a.m. I really do not understand what you're saying. What I'm reading this claim is applying this method on an item-by-item basis at the Christie auction. I have no idea why that doesn't work. It does work, but what you're saying is an application where it has to be on an item-by-item basis. That is a single sale. That's exactly what the district court adopted. Let's say we go to the Christie's sale in the morning, and we say, I would like to bid on the brownie guitar, a particular item, with 10 minutes left in the auction. We're going to assume that they have a specified end time for the brownie auction. But the end of the Christie auction... The end time with respect to that particular item, right? That is not their contention, Your Honor. Could I point the court to the colloquy that happened with the district court at A898 through A900. It actually starts about A896. In that colloquy with the court, the district court was struggling to understand, does your auction have one end time, the end of the Christie's auction event at 6 p.m., or does it have multiple end times, each of the individual auctions? What the plaintiff said to the district court is, if there are multiple lots or items within an auction, we still look to the end time for the auction event, not the lots. That's at 899. Well, that may be wrong, but so what? Are you saying that they essentially waived the interpretation that Judge Dykes is hypothesizing? I'm saying that in order to solve the problem of what end time you're bidding against, they have taken the position in front of the district court. That's wrong. I think you're right. That's not right. It's got to be the end time for the particular item. Right. The district court's interpretation that it is for that sale is for the sale of the item, of the guitar. Right. That's the end time of that auction. That's an auction for that item. It ends in a sale. That's the sale. It excludes the other option that says at the end of the day, 6 p.m., that's what I'm bidding against. Right? Well, that may be true, but I don't understand why you can't say it's on an item-by-item basis with the time expiring with respect to each item and still read the word auction here as covering multiple items. The definition that you're providing is literally saying that the auction ends when one item is sold. No, the auction for that item ends when the item is sold. Correct. The auction for that item ends. When we apply the claim, we have to measure what the auction is the same way across each of the claim elements. The auction that you enter to buy a particular guitar is that auction, to buy that guitar. It is not the Christie's auction event. You don't bid against the 6 p.m. deadline. You bid against the end of the auction for the guitar you want. That's what the district court understood was impacting, created all these problems that the district court has described and asked the plaintiffs, which end time is it? I have to have one end time to measure against. We accept that the application that you're asking for works. The district court accepted that. That is the import of its claim construction. I want this guitar. I want to bid 10 minutes before the end of the auction. We're done. It's the same auction. It's the auction for the item. It's the end time of the auction for the item. It's not the end time for the auction of 100 different guitars. That's the problem. And in that description, Judge Dyke's hypothetical, again, I'm sorry to take you back to state law, but it has to be that way because otherwise there is no certainty. That's right. And the auction doesn't act. It doesn't end. A bidder doesn't get what they're bidding. Absolutely. Absolutely. So three problems we've identified, no control over bidding on the right item, no control over whether you're bidding against yourself, and the provisional provides, the provisional application at A422, this is a specific intent of the patent, is that the auction server must make sure that the bidders are bidding against each other and not against themselves. Furthermore, the concession that they've made that the highest bid in the auction must be for the item can simply be applied, I think, actually exactly as you're doing, Judge Dyke, to the earlier point. The amount of time must be left in that auction for that item, for a singular item. And I think that when the Phillips directs us to apply those equally. The other spec support that I think it's important for the court to consider is figure eight, which is an example record from the auction. And in that, it's one item, right? It is the guitar you want to buy. And that auction has a start time and an end time specified in that record. And that is, again, a single item to a single sale. Yeah, but the problem, it seems to me, is you focus maybe on the wrong terminology. And what you ought to be arguing, and maybe should be in front of us, is that the end time has to be the end time for the particular auction. I don't understand that to be the construction. I can say auction in this claim includes an auction for multiple items. I easily can do that. I can read the claim to make sense out of it. And it still is done on the item by item basis with an end time for that particular item. That all makes sense. But it doesn't seem to me that the word auction can necessarily carry the argument that you're trying to make. Because I think auction can mean multiple things, but still make sense out of this claim. That's the problem I'm having. Right. I understand your point, Your Honor. And we have agreement that the court is properly trying to understand what is the end of what auction are we talking about, right? There is ambiguity in the word items that the plaintiffs have pointed to goods and services. But as you see throughout the patent, there are only a single item, sometimes with multiple goods, but it's a single item. And there's a concession in the record that the specification does not explicitly discuss multi-item auctions. That's at A1115. And they're trying to just say because there's prior art that describes other types of auctions out there, our patent is broader than it might otherwise be. And I don't think that is a proper use of prior art in this case. I see I'm running out of my time, Your Honor. So unless your panel has further questions, I'll rest. Thank you, Mr. Malachek. Mr. Fenster has some time left, if he needs it. We are here on the term auction. And the amount of time left in the auction is a separate question. Auction is governed by its plain meaning unless there's a clear disavowal and there isn't one. Now, let me address Your Honor's question. I think that it does work in multi-item auctions. It doesn't necessarily work in every auction. And what Mr. Malachek, his example of the Christie's auction of the single guitar. Well, if I want a particular guitar, the bid, and I say, and I place my bid according to the end of the auction, it may or may not work. It may not apply to that auction. That doesn't inform the construction of auction. Auction has its plain and ordinary meaning unless there's clear disavowal. Now, it does apply and does work where you have multiple lots of fungible goods. Like mooring, like defendant system, like commodities, like livestock. And, Your Honors, the intrinsic record is clear that such multi-unit sales, multi-sale auctions of fungible goods are within the ordinary definition of auction. So the specification in the background section cites Fischer. Fischer is in the court's appendix at 989, and at columns 9 through 11 it talks about multiple different types of multi-sale auctions. It's undisputed that the normal use, the plain meaning of auction includes multiple sales. And there's also the mooring reference. The specification states in the very first line that auctions for items may be held in many different ways. And while Mr. Malachek is correct that the examples that are used are single sale, there is no clear disavowal of multi-sale auctions. Therefore, the court should just give it its plain and ordinary meaning and reverse the court's claim construction and the final judgment is based on that erroneous claim construction. Unless the court has other questions, I do just want to address this. Go ahead. This still bothers me. The plain language envisions bids made in a time-limited auction for a particular item or lot. Yes. I agree with the first part of your Honor's premise that it is a time-limited auction during which an item or items may be sold. Now, it could be a mooring-type auction where you have multiple lots of fungible goods that are sold throughout the day throughout a time-ended auction. If auction is included, is construed to include multiple items or multiple sales, the bid generator places bids according to the amount of time left in the auction of a particular item or lot. Yes. Yes, but it could be a number of, meaning I want one lot of these multiple fungible goods, I want one ad within these fungible ads, or I want five ads. So, yes, the bid will be placed, the bid generator will be placed for those goods that are being auctioned at the time that is met by that rule. It's not going to apply in every situation. As I understand it, for you to win, this claim has to cover the simultaneous auction of multiple items rather than an auction in which each item is treated separately. Is that fair? If I understand Your Honor's question, I don't think so. I do think that the auction can contain multiple serial sales. I think that's what you're getting to. Well, what I'm saying is that what you're trying to do is to construe this claim as applying to an auction where multiple items are being sold and bid on at the same time as opposed to an auction in which each item is handled separately. I don't think I'm assuming that premise. Individual items can be bid serially throughout the day. The ads can be auctioned off throughout the day. But I guess the problem is with the defendant's auctions, there's no time limit for a particular item. There's only a time limit for the overall auction of multiple items. It's true that we're talking about the end time for the period that they define in their own documents, which is an infringement question. That is the time period that we're talking about. The reason that this claimed method works for defendant's system is because they're auctioning off fungible ad spaces. You're not auctioning off this particular ad space or this particular page view. But for you to prevail, the time limit has to be on an overall basis for multiple items as to when the auction ends rather than a specific time limit with respect to the one item. That is the infringement rate in this case, Your Honor. And that's an infringement question that goes to whether or not the time determining the amount of time left in the auction. And we think that that element is clearly met. But that's an infringement question. It doesn't inform the claim construction of auction, which there's no basis in the record to deviate from the plain and ordinary meaning. And they express definition in the specification. Thank you, Mr. Fenster. This isn't an auction, but the time of the event is over. Thank you very much, Your Honor. It's time to retire. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.